THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD L. WELLS, Defendant-Appellant.

Third District   No. 3—02—0130

Opinion filed March 11, 2004.

Carrie B. Marche, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Lawrence M. Bauer and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

A jury found the defendant, Ronald L. Wells, guilty of first degree (felony) murder (720 ILCS 5/9—1(a)(3) (West 2000)) and concealment of a homicidal death (720 ILCS 5/9—3.1(a) (West 2000)). The felony murder conviction was based on robbery. The defendant was sentenced to concurrent prison terms of natural life and five years, respectively. On appeal, the defendant is challenging only his murder conviction and sentence. He argues that (1) the State failed to prove beyond a reasonable doubt that he committed the robbery upon which his felony murder conviction was based; (2) he was not eligible to receive a natural life sentence; (3) his trial counsel was ineffective by failing to fully develop a self-defense theory; and (4) the trial court erred by failing to instruct the jury on self-defense, second degree murder, or attempted murder. We affirm.

## BACKGROUND

The events in question took place in Peoria. On March 15, 2001, the victim, Jamie Weyrick, and the defendant drove in Weyrick's car to find someone from whom Weyrick could buy marijuana. The defendant located a person named "Curtis" who said he would sell marijuana to Weyrick for $200. Weyrick gave $200 to Curtis, who left with Weyrick's money and did not return. Weyrick told the defendant that he held the defendant responsible for losing his $200 and expected the defendant to reimburse him for the loss.

The defendant told Weyrick that he did not have $200 to repay Weyrick, but he could make some phone calls to get the money. Weyrick and the defendant then drove toward the defendant's home in Weyrick's car.

Weyrick's girlfriend, Patricia Lane, testified at trial. On cross-examination, defense counsel asked Lane about Weyrick's affiliation with the Gangster Disciples. The prosecutor objected on relevance grounds. After the defense counsel's offer of proof, the trial judge sustained the State's objection.

The defendant gave two videotaped confessions to the police. In the first confession, the defendant stated that he killed Weyrick in someone else's garage. The defendant said that Weyrick threatened the defendant by showing him a gun.

In the second confession, the defendant admitted killing Weyrick in the defendant's home. The defendant said Weyrick told the

defendant that he had a gun, but did not show the defendant the gun. The defendant stated that Weyrick had a reputation for having a gun and the defendant thought that Weyrick was armed with a gun. However, the defendant said that Weyrick, in fact, did not have a gun on his person.

The defendant's wife, Angela Wells, agreed to testify in the defendant's trial after pleading guilty to Weyrick's murder. Angela stated that Weyrick and the defendant entered the house. The defendant then had a conversation with Angela in the bathroom. After the conversation, Angela went into the living room with the children and began to cry. In his second confession, the defendant stated that Angela and the children did not arrive at the home until after he killed Weyrick.

According to both Angela's testimony and the defendant's second confession, the defendant and Weyrick went upstairs to the kitchen. In his second confession, the defendant said that he stabbed Weyrick in the back with a knife in the kitchen. The defendant said that Weyrick turned and fought with the defendant, who stabbed Weyrick multiple times in the neck and chest. The defendant left Weyrick on the kitchen floor after the defendant thought Weyrick was dead. He said that he left the knife next to Weyrick. The defendant stated that he went downstairs, but then returned to the kitchen. He alleged that when he returned to the kitchen, Weyrick attacked him with the knife. The defendant said that he got the knife away from Weyrick and stabbed Weyrick several more times.

The defendant's son, Dustin Gaston, also testified at trial. Both Angela and Gaston testified that they heard the defendant and Weyrick fighting upstairs. They heard the fight continue down the stairs into the front room. Angela and Gaston both stated that they heard Weyrick plead for his life. Angela said that Weyrick told the defendant, "I gave you all I got."

In the defendant's second confession, the defendant said that after he stabbed Weyrick several more times in the front room, Weyrick fell to the floor in a pool of blood. According to Angela and the defendant's second confession, Angela and the defendant wrapped Weyrick in a blanket, carried him to the basement, and put him in an unplugged, empty freezer.

In the defendant's second confession, he stated that he took $400 from Weyrick's wallet. He said that he took Weyrick's automatic teller machine (ATM) card out of the wallet along with a piece of paper with the personal identification number (PIN) for the ATM card. The defendant then threw the wallet in the trash. However, Angela testified that it was she who took Weyrick's ATM card and PIN number

from the wallet. Angela stated that she also took $1,000 from Weyrick's wallet. Angela said that she later used Weyrick's ATM card and PIN number to withdraw $10 from Weyrick's credit union account.

In his second confession, the defendant stated that he took Weyrick's gold "nugget" ring and silver necklace. The defendant said that he sold the necklace and pawned the ring. A pawnshop owner testified that the defendant pawned the ring, but later returned and redeemed it.

Angela testified that the defendant cleaned the blood off himself, changed clothes, left the home, and did not return for several hours. According to Angela and Gaston, the defendant drove away in Weyrick's car. According to both of the defendant's confessions, the defendant paid a third party $200 to dispose of Weyrick's car. After Weyrick's disappearance, Lane located Weyrick's car parked in a neighborhood far from Weyrick's home. Lane then notified the police about the location of the car.

Angela testified that after the defendant left the house, Angela heard a noise coming from the basement. When she went to the basement to investigate, she saw that Weyrick was not dead. He had opened the lid of the freezer, and was attempting to climb out. She went upstairs, where she got a hammer and a kitchen knife. She hit Weyrick on the head three or four times with the hammer and stabbed him several times in the neck, chest, and abdomen with the knife. Angela then asked Gaston to sit on the freezer lid while she tied the freezer's handle with telephone cord. She told the police that she waited about three hours until Weyrick stopped breathing. When the defendant returned to the home, he and Angela buried Weyrick's body in the backyard.

Lane told the police that she had last seen Weyrick with the defendant in Weyrick's car. When the police initially questioned the defendant about Weyrick's disappearance, the defendant denied any involvement. When the police questioned the defendant a second time, he gave his first confession, in which he stated that he had killed Weyrick in a garage at a different address than his home address.

The police investigated the garage the defendant had described, where they found no evidence of a struggle. After the police confronted the defendant with the lack of evidence at the garage and with security photos of Angela withdrawing money from the ATM, the defendant gave his second confession. In his second confession, the defendant described burying Weyrick's body in the backyard. The police then went to the defendant's home, where they dug up Weyrick's body. The police also obtained blood evidence from various locations in the house that matched Weyrick's DNA. The blood evidence was admitted at trial.

The coroner testified that Weyrick's body was recovered about a month after the murder and was beginning to decompose. Weyrick's brain was swollen, which indicated that it had been deprived of oxygen before he died. Weyrick's lungs were collapsed. Weyrick's body had multiple stab wounds to his back, neck, chest, and abdomen. Additionally, the body had multiple blunt force wounds to the head.

The coroner stated that Weyrick died of the combination of bleeding from his multiple stab wounds, the blunt force wounds, and asphyxiation. According to the coroner, Weyrick could have died solely as a result of blood loss from a combination of his various stab wounds and blunt force wounds.

The defendant and Angela were named as codefendants in the indictment for Weyrick's murder and the concealment of his homicidal death. They were charged with one count each of "felony" murder based on robbery (720 ILCS 5/9—1(a)(3) (West 2000)), "intentional" murder (720 ILCS 5/9—1(a)(1) (West 2000)), "knowing" murder (720 ILCS 5/9—1(a)(2) (West 2000)), and concealment of a homicidal death (720 ILCS 5/9—3.1(a) (West 2000)).

During the jury instruction conference, the defendant asked for instructions on self-defense, second degree murder, and attempted murder. The trial court denied these requests. The jury found the defendant guilty on all four counts.

During the sentencing hearing, police officers testified about their investigations of two other deaths to which the defendant was connected. The officers said that the defendant had told them that Weyrick's death and the two other deaths were somehow related to threats against the defendant, threats against his family, drugs, money, and gangs. The defendant previously had complained to the police about Weyrick threatening him and his family.

The trial court sentenced the defendant on the felony murder count, but did not enter judgment on the other murder counts. The judge sentenced the defendant to life imprisonment based on the aggravating factor that the murder was committed during the course of the forcible felony of robbery (720 ILCS 5/9—1(b)(6)(c) (West 2000)). The court also sentenced the defendant on the concealment of a homicidal death. The defendant appealed.

## ANALYSIS

### I. Felony Murder Based on Robbery

The defendant submits that the State failed to prove beyond a reasonable doubt that he committed the robbery on which his felony murder conviction was based. Specifically, he contends that the State failed to show that he took property from Weyrick by the use or threat

of force. He also argues that it was Angela rather than the defendant who took property from Weyrick.

■ When analyzing the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Barham*, 337 Ill. App. 3d 1121, 788 N.E.2d 297 (2003).

■ A person commits felony murder when he kills an individual without lawful justification, and in performing the acts that cause the death, commits a forcible felony other than second degree murder. 720 ILCS 5/9—1(a)(3) (West 2000). Robbery is a forcible felony. 720 ILCS 5/2—8 (West 2000). A person commits robbery when he takes property from the person or presence of another by the use of force. 720 ILCS 5/18—1 (West 2000).

■ A person is responsible for conduct that is an element of an offense when the conduct is either that of the person or the conduct of another person for whom he is legally accountable. 720 ILCS 5/5—1 (West 2000). A person is legally accountable for the conduct of another when, either before or during the commission of the offense and with intent to promote or facilitate such commission, the person aids or abets the other person in planning or committing the offense. 720 ILCS 5/5—2(c) (West 2000).

The defendant relies, in part, on *People v. Tiller*, 94 Ill. 2d 303, 447 N.E.2d 174 (1982), for the proposition that he did not commit a robbery. In *Tiller*, the victim was a postal worker. The defendant left the scene of the crime, and the victim was killed by codefendants. The defendant returned after the murder and took the mail truck and undelivered mail. The *Tiller* court ruled that the defendant had not committed armed robbery because there was no evidence that the force exerted against the victim was for the purpose of depriving her of the mail truck or mail.

We find the holding of *Tiller* to be inapplicable to the instant case. Here, a rational trier of fact could have found beyond a reasonable doubt that the force exerted by the defendant against Weyrick was for the purpose of depriving him of several items of his property.

■ In the present case, a rational trier of fact could have found beyond a reasonable doubt that the defendant was accountable for Angela's conduct in killing and robbing Weyrick. A reasonable jury could have found that the defendant and Angela aided and abetted each other in planning and causing Weyrick's death and taking various items of his property. The record shows that the defendant and Angela acted together to commit the multiple traumas that caused Weyrick's death. The record also shows that the defendant and Angela

acted in concert to take Weyrick's wallet, money, ATM card, jewelry, and car. These items were forcibly taken from Weyrick's person or presence by the defendant and Angela by stabbing Weyrick with knives, striking him with a hammer, and asphyxiating him in a closed freezer.

Taking the evidence in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that the defendant committed a robbery. Therefore, the trial court did not err by entering judgment against the defendant for felony murder based on robbery.

## II. Natural Life Sentence

The defendant argues that the trial court erred in sentencing him to natural life imprisonment because he neither inflicted the injuries that caused Weyrick's death nor inflicted wounds substantially contemporaneously with the wounds inflicted by Angela.

■ Sentencing is a matter of judicial discretion, and a sentence imposed by the trial court will not be disturbed on review absent an abuse of that discretion. *People v. Streit*, 142 Ill. 2d 13, 566 N.E.2d 1351 (1991). A defendant convicted of first degree murder may be sentenced to natural life imprisonment if the trier of fact finds beyond a reasonable doubt that a death penalty aggravation factor is present. 730 ILCS 5/5—8—1(a)(1)(b) (West 2002). One such aggravation factor is that:

"(6) the murdered individual was killed in the course of another felony [and]:
> (a) the murdered individual:
>> (i) was actually killed by the defendant, or
>> (ii) received physical injuries personally inflicted by the defendant substantially contemporaneously with physical injuries caused by one or more persons for whose conduct the defendant is legally accountable *** and the physical injuries inflicted *** caused the death of the murdered individual; and
> (b) in performing the acts which caused the death of the murdered individual[,] *** the defendant acted with the intent to kill the murdered individual or with the knowledge that his acts created a strong probability of death *** to the murdered individual ***; and
> (c) the other felony was *** robbery ***." 720 ILCS 5/9—1(b)(6) (West 2002).

■ The defendant relies, in part, on *People v. Derr*, 346 Ill. App. 3d 823 (2004), for the proposition that he was not eligible for a natural life sentence. The defendant concedes that the holding of *Derr* is inapposite to his case. However, the defendant contends that in *obiter*

*dicta,* the *Derr* court made clear that the acts causing the death had to be contemporaneous with the robbery. He submits that, in this case, the acts causing Weyrick's death were not contemporaneous with the robbery. We disagree.

The record shows that the defendant and Angela took several items of Weyrick's property contemporaneously with stabbing him, beating him with a hammer, and asphyxiating him in a freezer. Thus, the *dicta* in *Derr* is not helpful to the defendant.

The necessary elements of the aggravation factor in section 9—1(b)(6) were found by the trier of fact beyond a reasonable doubt. The jury found the defendant guilty of felony murder. The jury, therefore, found beyond a reasonable doubt that the defendant was accountable for Angela's acts. The record shows that the defendant inflicted wounds on Weyrick substantially contemporaneously with the wounds inflicted by Angela. The jury found beyond a reasonable doubt that the defendant committed "intentional" murder and "knowing" murder. As indicated above, the jury found beyond a reasonable doubt that the murder occurred during the robbery.

Because the necessary elements of section 9—1(b)(6) were clearly established, the trial court did not abuse its discretion by sentencing the defendant to natural life imprisonment.

### III. Ineffective Assistance of Counsel

The defendant contends that his trial counsel was ineffective by failing to fully develop a self-defense theory. Specifically, the defendant submits that his trial counsel failed to argue that Weyrick (1) was known to be a gang member; (2) was known to carry a gun; and (3) had threatened the defendant and the defendant's family.

■ To prove that his trial counsel was ineffective, a defendant must show that (1) counsel's conduct fell below an objective standard of reasonableness, and (2) the deficient performance so prejudiced the defendant that it is reasonably probable the result would have been different but for the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Albanese,* 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). A court may resolve a claim of ineffective assistance of counsel by reaching only the prejudice prong of the *Strickland* test, because a lack of prejudice makes the issue of counsel's alleged deficient performance irrelevant. *People v. Hall,* 194 Ill. 2d 305, 743 N.E.2d 521 (2000).

■ The Illinois self-defense statute states:

"[A person] is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or

great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7—1 (West 2000).

■ The record of the instant case shows that the defendant lured Weyrick to the defendant's home on the pretext that the defendant would make phone calls to obtain $200 for Weyrick. Even if Weyrick had previously threatened the defendant and the defendant's family, the record does not indicate that the defendant reasonably believed that the use of deadly force was necessary to prevent Weyrick from causing imminent death or great bodily harm to anyone in the defendant's home. The record also does not indicate that the defendant reasonably believed that the use of deadly force was necessary to prevent Weyrick from committing a forcible felony in the home.

The defendant has not shown that he was prejudiced by his trial counsel's failure to fully develop a self-defense theory. Therefore, under *Strickland*, the defendant's trial counsel was not ineffective.

## IV. Jury Instructions

The defendant submits that the trial court erred by failing to instruct the jury on self-defense, second degree murder, or attempted murder.

■ A defendant is entitled to instructions on his theory of the case when there is some foundation in the evidence for the instructions. *People v. Jones*, 175 Ill. 2d 126, 676 N.E.2d 646 (1997). A trial court's decision with regard to issuing specific jury instructions is reviewed under an abuse of discretion standard. *People v. Garcia*, 188 Ill. 2d 265, 721 N.E.2d 574 (1999).

### A. Self-Defense

■ The defendant argues that he was entitled to a jury instruction on self-defense. We ruled above that his trial counsel was not ineffective by failing to fully develop a self-defense theory. For similar reasons, we hold that there was no foundation in the evidence for a jury instruction on self-defense. The trial court did not abuse its discretion by failing to grant the defendant's request for such an instruction.

### B. Second Degree Murder

■ The defendant concedes that in *People v. Morgan*, 197 Ill. 2d 404, 758 N.E.2d 813 (2001), our supreme court ruled that a jury instruction on second degree murder is not available where the defendant was charged with felony murder. He asks that if we reverse his felony murder conviction, we should remand the matter for a new trial and a jury instruction on second degree murder. Because we did not reverse his felony murder conviction, we need not address this argument.

## C. Attempted Murder

The defendant contends that because the wounds he inflicted on Weyrick did not actually kill Weyrick, he was entitled to an instruction on attempted murder. He predicates this argument, however, on the premise that he was not accountable for Angela's actions in killing Weyrick. Because we held above that the defendant was accountable for Angela's conduct, we also need not consider this argument.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Peoria County circuit court.

Affirmed.

LYTTON and SLATER, JJ., concur.