FIFTH DIVISION
September 21, 2007

No. 1-05-1512

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| ELI CUNNINGHAM, | ) | Honorable |
| | ) | Dennis Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

After a bench trial, defendant, Eli Cunningham, was convicted of the attempted murder of his cousin, Sylvester Daniels. Defendant raises three issues on appeal: (1) his defense counsel was ineffective because he did not pursue a self-defense theory; (2) the trial court should have conducted an inquiry into the factual basis of a complaint that defendant lodged against his counsel with the Attorney Registration and Disciplinary Commission (ARDC); and (3) defendant is entitled to a $5- per-day credit toward a $4 fine. We shall address these issues *seriatim*.

BACKGROUND

On the evening of October 24, 2003, Sylvester Daniels (Daniels) was celebrating his birthday at a bar with friends and family, including his brother, Anderson Daniels, and his cousin,

Eric Cunningham (Eric). After Daniels engaged in a verbal altercation with another bar patron inside the bar, some in the party moved outside the bar. Daniels struggled with his brother and his cousin, Eric. Daniels wanted to reenter the bar to continue his argument with the patron. Daniels's brother and cousin, Eric, were trying to calm him down. Daniels pushed his brother and his cousin, Eric. At this point, Eric's son, who is the defendant, Eli Cunningham, arrived at the bar. Both defendant and Daniels had consumed large amounts of alcohol. Defendant approached Daniels and the two of them argued. Defendant told Daniels not to touch his father. Daniels hit defendant. Daniels' brother and a friend intervened and separated Daniels and defendant. Eventually, defendant returned to his car, and Daniels started walking away from the bar.

As Daniels walked away, he walked on the grassy area between the sidewalk and the road. The testimony was conflicting as to whether Daniels was on the grass or the curb, but in any event, he was closer to the road than to the sidewalk. Some people outside the bar began to call out Daniels' name. Daniels turned around and saw defendant driving toward him. Defendant's car struck Daniels injuring him, resulting in Daniels' right leg being amputated below the knee.

Defendant was arrested and later indicted for attempted first degree murder and five counts of aggravated battery. After police arrested defendant, Assistant State's Attorney (ASA) Douglas Harvath interviewed defendant. ASA Harvath testified that during the interview defendant told him that no guns were at the scene described above.

On cross-examination during the bench trial, however, defendant testified, "I thought I seen [*sic*] a gun," upon looking back up after reaching down to pick up a "blunt" of marijuana, and seeing Daniels standing near a pole. Defendant's testimony that he thought he had seen a gun

contradicted his earlier statements to ASA Harvath. No one else testified to seeing any guns that evening. Defendant further testified that he ducked down and thought he crashed into a pole. Without exiting his car, defendant left the scene.

During trial counsel's opening statement, counsel stated that he would show that the State could not prove that defendant intended to kill Daniels when defendant struck Daniels with his car. He also said that defendant "panicked and drove the car up on to the sidewalk after he believed that he was being confronted by Mr. [Sylvester] Daniels who[m] he thought had a gun." The State objected because counsel had not filed an answer asserting a self-defense defense. Counsel responded that self-defense was not defendant's defense, but instead the defense was reasonable doubt with respect to defendant's specific intent to kill Daniels.

The trial court found defendant guilty and merged the aggravated battery counts into the attempted murder charge. While announcing a finding of guilt the trial judge said that he did not find defendant's testimony believable. On the original sentencing date, trial counsel informed the court that defendant had filed a complaint against him with the ARDC and requested a continuance so that new counsel could represent defendant. That new counsel was counsel's associate in the same private law firm but he was unavailable on the original sentencing date. The trial court did not conduct an inquiry into the nature of the ARDC complaint and instead granted the continuance and allowed defendant to be represented by new counsel. At sentencing, defendant was represented by the replacement counsel. Defendant was sentenced to 16 years' imprisonment. The trial court also imposed fines and fees totaling $549. Defendant now appeals.

ANALYSIS

1-05-1512

## I. Ineffective Assistance of Counsel

The sixth amendment to the Constitution "recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063 (1984). An accused is entitled to "reasonably effective assistance," and the touchstone for judging claims of ineffective assistance is whether an attorney's conduct renders the trial results undependable. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The standard for an ineffective assistance claim has two prongs. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064, adopted by *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). First, a defendant must demonstrate that counsel's performance was deficient by showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Second, a defendant must also demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. In determining whether a defendant has received ineffective assistance of counsel, a reviewing court may review either prong first, and the court need not consider both prongs of the standard if a defendant fails to show one prong. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Under the first prong, counsel is afforded wide latitude when making tactical decisions and the law presumes that counsel will faithfully fulfill his or her role envisioned by the sixth

4

amendment. *Strickland*, 466 U.S. at 688-89, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65. Hence, counsel's assistance must fall "outside the wide range of professionally competent assistance" considering all the circumstances. *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066. Further, choices of trial strategy are virtually unchallengeable because such a choice "is a matter of professional judgment to which a review of counsel's competency does not extend." *People v. Cundiff*, 322 Ill. App. 3d 426, 435 (2001); see also *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066. "Trial strategy includes an attorney's choice of one theory of defense over another." *People v. Campbell*, 264 Ill. App. 3d 712, 732 (1992); accord *Cundiff*, 322 Ill. App. 3d at 435.

Defendant raises three arguments to show he received ineffective assistance from his trial counsel. Defendant first argues that he received ineffective assistance because counsel failed to file an answer asserting a self-defense defense. Next, defendant suggests that his trial counsel abandoned a self-defense theory because counsel failed to provide adequate notice of the self-defense theory in an answer to the State. Finally, defendant argues that his counsel was ineffective because counsel's intentional choice to pursue a strategy of showing defendant lacked the specific intent to kill Daniels, rather than a self-defense strategy, was unreasonable. We shall consider each contention with respect to the first prong under *Strickland*.

Defendant first suggests that simply not filing an answer violates the spirit of the discovery rules and thus falls below the objective standard of reasonable assistance, relying on *People v. Burns*, 304 Ill. App. 3d 1 (1999). While not filing an answer containing affirmative defenses may, at times, constitute attorney neglect (see, *e.g.*, *Burns*, 304 Ill. App. 3d at 11), this is not such a

1-05-1512

case. In *Burns*, the defendant's counsel knew of and intended to use an alibi witness, thus constituting an affirmative defense for which an answer was required. *Burns*, 304 Ill. App. 3d at 9. However, although counsel knew of the alibi and even initially listed the alibi witness as a possible witness, counsel intentionally chose to wait until the last minute to add the alibi witness as a testifying witness. *Burns*, 304 Ill. App. 3d at 11. Recognizing that counsel did this to effect surprise and gain an unfair advantage, the court held that such intentional and deliberate actions clearly violated the spirit of the discovery rules. *Burns*, 304 Ill. App. 3d at 11. The record in the present case, however, reveals no such surprise attempt by defendant's counsel. On the contrary, the record shows that counsel freely and consistently communicated his planned strategy to the State. Moreover, as discussed below, counsel's actions remained consistent with a lack-of-specific intent defense strategy throughout the proceedings. Hence, counsel's failure to file an answer in this case was not objectively unreasonable.

Defendant disagrees and next suggests that counsel intentionally abandoned a self-defense theory of defense. During his opening statement, defense counsel said that defendant thought Daniels had a gun, and the State objected because counsel had not previously identified a self-defense defense in an answer. Defendant asserts that his counsel decided to abandon a self-defense theory in response to the State's objection only to cover up the failure to file an answer. We disagree. Defendant's argument ignores the fact that a self-defense theory would have sharply contradicted defendant's pretrial statements to investigators and his trial counsel developed a strategy consistent with those statements. Moreover, defendant's accusation is belied by the record. Defense counsel's opening statement clearly lays out the strategy of attempting to

6

show that the State could not prove that defendant possessed the specific intent to kill Daniels because defendant was confused and acted in a panic. Likewise, counsel's motion for a directed finding further shows counsel's lack-of-specific intent strategy by, for example, drawing attention to testimony regarding Daniels' nearness to the street, as opposed to being on the sidewalk. Finally, the record is replete with counsel's attempts to elicit testimony from witnesses to show that defendant lacked the requisite mental intent, such as cross-examination of ASA Harvath where counsel questioned ASA Harvath about defendant's statements regarding his alcohol consumption prior to striking Daniels. Thus, it is evident that counsel did not "abandon" a self-defense theory in response to the State's objection, but instead attempted to further a strategic defense choice by asserting defendant lacked the specific intent to kill Daniels.

Finally, defendant argues that even if his counsel's decision to present a lack-of-specific intent defense was a strategic choice, it was an unreasonable one. However, defendant overlooks the fact that the charge against him – attempted murder – imposes a significant burden of proof on the State. The mental state required for attempted murder is well known. Conviction for attempted murder requires proof of the specific intent to kill someone. *People v. Jones*, 81 Ill. 2d 1, 8-9 (1979); *People v. Gentry*, 157 Ill. App. 3d 899, 903 (1987). Mere intent to do great bodily harm, or even knowledge that one's acts may result in great bodily harm or death, is insufficient. *Jones*, 81 Ill. 2d at 8-9. Thus, not only was it reasonable for defendant's counsel to choose a lack-of-specific intent defense strategy but, also, under the facts of this case, it was the best strategic choice.

Further, we find meritless defendant's contention that self-defense was a sound defense

strategy in this case. A successful self-defense defense requires that the evidence show that "unlawful force was threatened against a defendant, he believed the danger of harm was imminent, he was not the aggressor, force was necessary to avert the danger threatened against him, and the amount of force used was necessary." *People v. Peterson*, 202 Ill. App. 3d 33, 40 (1990); see also *People v. Wells*, 346 Ill. App. 3d 1065 (2004). Indeed, pursuing a self-defense theory would have presented defendant with three significant obstacles. First, the possibility that Daniels might have had a gun directly contradicts defendant's earlier statement to ASA Harvath that defendant had not seen a gun. Second, defendant was driving a car and reasonably could have sped away from Daniels, even if Daniels had had a gun. Third, no other witness testified to having seen a gun, leaving only defendant's testimony to establish that he acted in self-defense.

Thus, after careful review of the briefs, cases and record, we are not persuaded by defendant's arguments. Instead, we agree with the State that trial counsel prepared and followed a strategy consistent with a viable defense of reasonable doubt toward the defendant's specific intent to kill Daniels. Counsel's representation and reasonable strategic choice of a defense of defendant's lack of specific intent neither fell below an objective standard of reasonableness nor fell outside the wide range of professionally competent assistance. Since defendant has failed to show that the pursued trial strategy was unreasonable, we need not consider the second prong of the *Strickland* standard.

## II. Inquiry into Defendant's ARDC Complaint

Defendant urges remand for an inquiry into the factual basis of an ARDC complaint he filed against his trial counsel prior to post-trial proceedings, even though defendant was

subsequently represented by different counsel and defendant did not make a *pro se* motion alleging ineffective assistance of counsel. Essentially, defendant's argument likens the mere existence of an ARDC complaint to an actual claim of ineffective assistance, and it would require a trial court inquiry into the basis of every ARDC complaint by any defendant when the court becomes aware of such a complaint. We decline to announce and follow such a rule.

The ultimate purpose of a trial court's initial inquiry into a defendant's ineffective assistance claim is to determine whether new counsel should be appointed. See *People v. Nitz*, 143 Ill. 2d 82, 134-35 (1991); see generally *People v. Krankel*, 102 Ill. 2d 181 (1984). When a defendant's actual allegations show possible attorney neglect of the case, the court should appoint new counsel to argue ineffective assistance, rather than simply having original trial counsel or a defendant argue the claim. *Krankel*, 102 Ill. 2d at 188; *Nitz*, 143 Ill. 2d at 134. To invoke the rule announced in *Krankel* and its progeny, however, a defendant must at least make *some* allegation of ineffective assistance of counsel for the court to consider and must provide some factual specificity of the reason for the allegation. See *People v. Ward*, 371 Ill. App. 3d 382, 431-34 (2007). Mere awareness by a trial court that a defendant has complained about his counsel's representation imposes no duty on the court to *sua sponte* investigate a defendant's complaint. See *Ward*, 371 Ill. App. 3d at 434.

In addition, our supreme court has said that when a defendant retains private counsel, it is "not within the trial court's rubric of authority to advise or exercise any influence or control over the selection of counsel by defendant, who was able to, and did, choose counsel on his own accord. [Citation.] * * * Defendant [can] retain[] other counsel to represent him prior to the

9

hearing of his post-trial motions." *People v. Pecoraro*, 144 Ill. 2d 1, 15 (1991). However, at least one court has noted that it did not believe *Pecoraro* requires a trial court's automatic denial of *pro se* requests for new counsel whenever a defendant has retained private representation. *People v. Johnson*, 227 Ill. App. 3d 800, 810 (1992).

In the instant case, defendant retained private trial counsel, like the defendant in *Pecoraro*. However, unlike the defendant in *Pecoraro*, defendant here made no claim of ineffective assistance for the court to consider. Here, defendant's trial counsel told the trial court that defendant had filed an ARDC complaint against him, and counsel wanted to have another attorney, from the same firm, represent defendant during sentencing, but that replacement attorney was unavailable on the original sentencing date. The trial court immediately ordered a continuance and defendant was subsequently represented by replacement counsel during the sentencing phase.

A trial court's mere awareness of the existence of the complaint, without more, is insufficient to effectively raise a claim of ineffective assistance. Compare *Ward*, 371 Ill. App. 3d at 434, with *People v. Jackson*, 243 Ill. App. 3d 1026, 1033-1036 (1993) (court should have inquired into ARDC complaint's factual basis before denying defense counsel's written motion to withdraw based on a conflict of interest arising from defendant's ARDC complaint). A trial court's awareness of an ARDC complaint is not equivalent to an actual claim of ineffective assistance when a continuance is ordered and defendant is subsequently represented by different private counsel. Defendant here did not request new counsel when his trial counsel orally requested a continuance so that new counsel could represent defendant. Defendant did not

request different counsel during the sentencing phase when defendant was, in fact, represented by new counsel. In any event, defendant did not allege ineffective assistance before the court.

Defendant also relies on *Jackson*, 243 Ill. App. 3d at 1035, for the proposition that the court's awareness of an ARDC complaint against counsel always requires an initial inquiry. In *Jackson*, the trial court failed to conduct an initial inquiry when it became aware of an ARDC complaint's existence and denied the public defender's request to withdraw and to have new counsel appointed. *Jackson*, 243 Ill. App. 3d at 1033-36. *Jackson* is inapposite. Defendant overlooks the fact that in *Jackson* the trial court denied counsel's motion to appoint new counsel, so the defendant was not later represented by different counsel. *Jackson*, 243 Ill. App. 3d at 1035. Here, as noted earlier, the trial court allowed defendant's counsel's request for a continuance, so new counsel could represent defendant at sentencing, thus rendering moot any required inquiry into the ARDC complaint.

In sum, the initial inquiry's purpose is to determine whether new counsel should be appointed. Such an inquiry is irrelevant in the present case because defendant received new counsel.

### III. $4 Charge Subject to Credit

Defendant's third argument on appeal is that he is entitled to a $5-per-day credit for the 539 days of his incarceration prior to sentencing under section 110–14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110–14 (West 2002)) toward the $4 charge imposed by section 5–9–1(c–9) of the Unified Code of Corrections (730 ILCS 5/5–9–1(c–9) (West Supp. 2003)), the criminal/traffic conviction surcharge. We agree. After the filing of defendant's initial brief and

1-05-1512

the State's response brief, our supreme court resolved the issue in *People v. Jones*, 223 Ill. 2d 569 (2006). The criminal/traffic conviction surcharge of $4 is a fine that is subject to presentencing credit. *Jones*, 223 Ill. 2d at 587. Accordingly, we need not discuss the issue further.

Defendant's conviction is affirmed. Defendant is entitled to a $4 credit toward the criminal/traffic conviction surcharge imposed in the order assessing fines, fees and costs, reducing defendant's total owed to $545.

Affirmed as modified.

O'BRIEN and O'MARA FROSSARD, JJ., concur.