Opinion filed September 22, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-1390 |
| JAMES KYLES, | ) ) ) ) | Honorable John R. Truitt and Brendan A. Maher, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Bridges and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1 On May 14, 2012, defendant, James Kyles, was charged by information with aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)), attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)), and two other offenses. Per section 5-130(1)(a) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-130(1)(a) (West 2010)), the State charged him as an adult. Defendant later pleaded guilty to aggravated battery with a firearm. In return, the State dismissed the other charges and agreed to a sentencing cap of 25 years' imprisonment. The trial court accepted his plea and later sentenced him to 21 years. By counsel, defendant moved to reconsider the sentence. He also moved *pro se* to withdraw his guilty plea and

vacate the judgment, alleging in part that his attorney was ineffective. At a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), his attorney voluntarily withdrew, and the court appointed new counsel, who later moved to reconsider the sentence but abandoned defendant's ineffective-assistance claims. The court denied the motion, and defendant appealed.

¶ 2 On appeal, defendant contends that (1) the judgment is void because the indictment did not invoke section 5-130(a)(1) of the Juvenile Court Act; (2) the trial court's postsentencing admonishments did not comply with Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001)); (3) the court did not conduct the required inquiry into defendant's claims of ineffective assistance of counsel; and (4) *Krankel* counsel rendered ineffective assistance. We agree with the third and fourth claims of error, and we reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4 On May 14, 2012, the State filed a four-count information. It gave defendant's name and birthdate, December 1, 1995, followed by "(Juvenile Court Excluded Jurisdiction pursuant to 705 ICS 405/5-130(1)(a))." Although defendant was listed alone in the caption, all the counts charged him and Charles Stallworth jointly with (1) aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)) in that, on May 12, 2012, they "intentionally and by means of discharging a firearm" caused an injury to D.J.-P. by shooting him in the head with a handgun; (2) attempted first-degree murder in that they "knowingly shot [D.J.-P.] while armed with a firearm"; (3) unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8(a)(2) (West 2010)); and (4) aggravated unlawful use of a weapon (UUW) (720 ILCS 4/24-1.6(a)(2), (a)(3)(C) (West 2010)) in that they "knowingly carried on or about his [*sic*] person" a firearm without having a valid Firearm Owner's Identification (FOID) Card. On May 14, 2012, defendant first appeared in court. He had no attorney. The court recited the charges and appointed the public defender.

¶ 5 On June 6, 2012, the State filed a five-count indictment against Stallworth (case No. 12- CF-1389) and defendant (case No. 12-CF-1390). Count I read:

"On or about May 11, 2012, in the county of Winnebago, State of Illinois, JAMES KYLES committed the offense of ATTEMPT MURDER in that said defendant, with the intent to commit the offense of First Degree Murder ***, performed a substantial step toward the commission of that offense in that without lawful justification and with the intent to kill [D.J.-P.], the defendant discharged a firearm causing injury to [D.J.-P.] and said defendant personally discharged a firearm that proximately caused great bodily harm to [D.J.-P.]."

¶ 6 Counts II through V charged defendant and Stallworth with, respectively, attempted murder, aggravated battery with a firearm, aggravated unlawful use of weapons based on immediate accessibility (720 ILCS 5/24-1.6(a)(1), (a)(3)(B) (West 2010)), and aggravated UUW based on the lack of a valid FOID card (*id.* § 24-1.6(a)(1), (a)(3)(C)). Count III alleged that both defendant and Stallworth committed aggravated battery with a firearm in that "said defendants *** knowingly and by means of the discharging of a firearm caused an injury to [D.J.-P], in that said defendants shot [D.J.-P.] in the face with a firearm, a handgun."

¶ 7 On July 18, 2012, defendant was arraigned, and he and his counsel received a copy of the indictment. On October 17, 2012, Glenn Jazwiec appeared as defendant's new counsel.

¶ 8 On September 3, 2014, the State moved to compel defendant to submit to the withdrawal of blood, hair, saliva, or a buccal swab. The motion alleged in part, "On May 11, 2012, [D.J.-P.] was shot in the head by an individual who was later identified as James Kyles."

¶ 9 On November 6, 2015, the parties informed the court, Judge John R. Truitt, that defendant would plead guilty to aggravated battery with a firearm and the State would dismiss the remaining

charges and recommend a sentence of no more than 25 years, 5 years less than the maximum (see 730 ILCS 5/5-4.5-25(a) (West 2010)). In presenting the factual basis, the prosecutor stated in part that three people submitted signed statements that they saw defendant shoot D.J.-P. in the head. The court approved the agreement and accepted defendant's plea.

¶ 10 On January 1, 2016, a new sentencing statute took effect. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016). Under the new act, codified at section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)), when sentencing an individual who was under 18 at the time of the offense, the trial court must consider nine "additional factors in mitigation": (1) the person's age, impetuosity, and level of maturity at the time of the offense; (2) whether he or she was subjected to outside pressure; (3) his or her family, home environment, educational, and social background; (4) his or her rehabilitative potential; (5) the circumstances of the offense; (6) his or her degree of participation and specific role in the offense; (7) whether he or she was able to participate meaningfully in the defense; (8) his or her juvenile or criminal history; and (9) any other information that the court finds relevant and reliable. *Id.* § 5-4.5-105(a).

¶ 11 On March 18, 2016, the cause proceeded to sentencing. D.J.-P.'s mother testified that her son was partially paralyzed, had undergone numerous surgeries, and faced a long rehabilitation. Four victim impact statements were admitted. Defendant's sister and cousin testified that he had recently become less angry and more positive. In allocution, defendant apologized and said that he was now being medicated for his long-standing bipolar disorder. The State requested that defendant be sentenced to 25 years. Defendant requested 10 years.

¶ 12 Judge Truitt stated that he had considered the factual basis, the victim impact statements, the evidence from the hearing, defendant's allocution, and "those factors in aggravation and mitigation that apply." Defendant's crime was "especially senseless" because the initial "beef" had

been between Stallworth and the victim, but defendant intervened by taking the safety off the gun, pointing it at D.J.-P., and shooting him twice from six feet away. The judge continued:

"The Court is considering the following in mitigation: The defendant's age. He wasn't even 17 years old at the time this offense was committed. And we're all aware of the studies out there and suggested changes in sentencing guidelines involving juveniles based at least in part on the fact that their brains aren't developed. They don't make wise decisions. And so I am taking into account the defendant's age at the time of this offense."

¶ 13 The judge also said that he had considered defendant's mental health problems, the classes that he was taking in jail, that he did not come to the scene of the crime armed or intending to use a gun, and any sincere remorse that he showed in allocution. In aggravation, one primary factor was defendant's history of delinquency, including residential burglary, possession of a stolen firearm, criminal trespass to a vehicle, and criminal damage to property; this series of offenses began when he was age 14. The other primary factor was the severity of D.J.-P's injury: he was still in rehab four years after being shot and would need care for a long time. The judge sentenced defendant to 21 years in prison. He then admonished defendant that, if he wished to appeal, he must first file in the trial court, within 30 days, a motion to withdraw his guilty plea and vacate the judgment and that, if the judge denied the motion, defendant would have 30 days to appeal. Defendant said that he understood.

¶ 14 On March 25, 2016, Jazwiec filed an amended motion to reconsider sentence contending that the court had improperly considered the extent of D.J.-P.'s injuries and had slighted defendant's age and other mitigating factors. It did not mention the new sentencing statute.

¶ 15 On July 20, 2017, defendant moved *pro se* to withdraw his plea and vacate the judgment of conviction. He requested the appointment of new counsel. The motion contended in part that

Jazwiec had rendered ineffective assistance, although it also raised a claim of actual innocence. Specifically, the motion alleged that Jazwiec misled defendant into pleading guilty by inducing him to believe that he would be sentenced to no more than 10 years' imprisonment. Further, until the day before the plea hearing, Jazwiec assured defendant that no deals had been made and that the case would go to trial. On the day before the plea hearing, he told defendant that the State and the judge had agreed that he would get no more than 10 years. Just before the plea hearing, Jazwiec told defendant to answer "yes" to all of the judge's questions and stay silent otherwise. The motion alleged that, but for Jazwiec's errors, defendant would not have pleaded guilty.

¶ 16 On August 17, 2017, Jazwiec, whose amended motion to reconsider the sentence was pending, requested leave to withdraw. That day, at a hearing, Judge Brendan A. Maher stated that he had read defendant's *pro se* motion and was permitting Jazwiec to withdraw. The judge appointed the public defender to represent defendant and review his *pro se* motion. On October 4, 2017, Margie O'Connor appeared as defendant's attorney. The court continued the cause to October 17, 2017.

¶ 17 On October 17, 2017, O'Connor stated that defendant had decided to proceed only on the amended motion to reconsider the sentence and not on his *pro se* motion. The court set November 9, 2017, for argument on the former. On November 6, 2017, O'Connor filed a second amended motion to reconsider the sentence. It reiterated the contentions of Jazwiec's motion and also asserted that the court had failed to consider the financial impact of incarcerating defendant and all of the factors in section 5-4.5-105(a).

¶ 18 On December 18, 2017, the court heard arguments on the second amended motion to reconsider the sentence. O'Connor contended that Judge Truitt never specifically mentioned section 5-4.5-105(a), showing that he had not considered all the factors therein. She argued further

that Judge Truitt improperly considered the severity of the victim's injuries and failed to consider the cost to the public of incarcerating defendant. On January 26, 2018, Judge Maher denied the motion. He explained that the record, including the sentencing hearing and the presentence investigation report, showed that Judge Truitt considered all the section 5-4.5-105(a) factors. Also, Judge Truitt specifically mentioned defendant's age and " 'the studies out there and suggested changes in the sentencing guidelines involving juveniles based on at least in part the fact that their brains aren't developed, they don't make wise decisions.' " Further, he had discussed defendant's level of participation in the offense, his mental health problems, his juvenile record, and the remorse he expressed in allocution. Also, the severity of D.J.-P.'s injuries was not inherent in the offense as charged.

¶ 19 Judge Maher stated that although the plea was partially negotiated, defendant could still move to reconsider the sentence and thus had "a perfected right to an appeal." Defendant appealed.

¶ 20                                   II. ANALYSIS

¶ 21 On appeal, defendant contends first that his conviction and sentence are void. Defendant argues that, for the court to acquire jurisdiction, the indictment had to comply with section 5-130(1)(a) of the Juvenile Court Act, which reads:

> "The definition of delinquent minor under Section 5-120 of this Article [(705 ILCS 405/5-120 (West 2010))] shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with: (i) first degree murder; (ii) aggravated criminal sexual assault; (iii) *aggravated battery with a firearm* as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05 [(720 ILCS 5/12-4.2, 12-3.05(e)(1)-(4) (West 2010))] *where the minor personally discharged a firearm* as defined in Section 2-15.5 of the Criminal Code of 1961 [(*id.* § 2-15.5)] ***.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." (Emphases added.) 705 ILCS 405/5-130(1)(a) (West 2010).

Section 2-15.5 of the Criminal Code of 1961 (720 ILCS 5/2-15.5 (West 2010)) reads, "A person is considered to have 'personally discharged a firearm' when he or she, while armed with a firearm, knowingly and intentionally fires a firearm causing the ammunition projectile to be forcefully expelled from the firearm."

¶ 22 Defendant argues that count III of the indictment, which charged the qualifying offense of aggravated battery with a firearm, failed to allege that he personally discharged a firearm. Defendant notes that the count was directed against both him and Stallworth and alleged only that "said defendants" discharged a firearm and shot D.J.-P. in the face. He concedes that count I, for attempted murder, did specifically allege that he personally discharged a firearm, but he argues that, because attempted murder is not covered by section 5-130(a)(1), count I did not cure the deficiency. For the following reasons, we hold that the indictment sufficiently alleged that defendant committed aggravated battery with a firearm by personally discharging a firearm.

¶ 23 Whether the prosecution of a minor is subject to automatic transfer under section 5-130(1)(a) depends on the charging instrument. *People v. Fort*, 2017 IL 118966, ¶ 30. *People v. J.S.*, 103 Ill. 2d 395, 403 (1984). In deciding whether the indictment was sufficient, we must read it as a whole, keeping in mind that elements missing from one count may be supplied by another count. See *J.S.*, 103 Ill. 2d at 409; *People v. Wade*, 2015 IL App (3d) 130780, ¶¶ 28-30.

¶ 24 Here, even if count III, charging aggravated battery with a firearm, did not sufficiently allege that defendant personally discharged a firearm, the indictment as a whole did. Read in isolation, the allegation that *both* defendant and Stallworth "shot [D.J.-P.] in the face with a

firearm, a handgun" might leave a reasonable person confused. However, count I was directed solely against defendant and alleged plainly that *he* shot D.J.-P. in the face. Thus, the indictment as a whole charged defendant with aggravated battery with a firearm based on his personally discharging the firearm. Therefore, we reject defendant's first contention of error. (We need not decide whether the allegation in the State's discovery motion may be considered in deciding whether the offense was sufficiently charged.)

¶ 25 Defendant's second contention of error is that the trial court did not provide him proper postsentencing admonishments. He observes that he entered a negotiated plea, as the State agreed to a sentencing cap. Thus, he notes, under Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001), after imposing the sentence, the court was required to admonish him that, in order to preserve his right to appeal, he would have to file a timely motion to withdraw his plea and vacate the judgment. See *People v. Johnson*, 2019 IL 122956, ¶¶ 37-41. Defendant asserts that at the "resentencing," Judge Maher incorrectly stating that defendant had "perfected" his right to appeal by filing the motion to reconsider his sentence. Defendant requests a remand for compliance with Rule 605(c).

¶ 26 Defendant simply misreads Rule 605(c). It requires a trial court, "at the time of imposing sentence," to admonish a defendant that, before taking an appeal, he must file within 30 days in the trial court a motion to have the judgment vacated and for leave to withdraw the guilty plea. Ill. S. Ct. R. 605(c)(2) (eff. Oct. 1, 2001). When Judge Truitt sentenced defendant, he immediately gave him this admonishment. Defendant does not contend that Judge Truitt erred but only that, in refusing to reconsider the sentence, Judge Maher failed to follow Rule 605(c). But by its clear terms, Rule 605(c) did not apply. Indeed, giving the admonishment then would have been a gross error: it was too late to file a motion to vacate the judgment and withdraw the guilty plea.

¶ 27 Defendant's third and fourth claims of error relate to the proceedings following his *pro se* motion. He contends that, at the *Krankel* hearing, the trial court failed to inquire into the basis of his claims that Jazwiec had been ineffective. He also contends that his new counsel, O'Connor, rendered ineffective assistance. We agree with both claims.

¶ 28 When a defendant presents a posttrial or postplea *pro se* claim that his trial counsel was ineffective, the trial court is not automatically required to appoint new counsel for him to argue his claim. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). Instead, the court should examine the basis of the claim, and if it determines that the claim lacks merit or pertains only to matters of trial strategy, then it need not appoint new counsel and may deny the *pro se* motion. *Id.* at 77-78. However, if the allegations show possible neglect of the case, then new counsel should be appointed. *Id.* at 78. New counsel would then represent the defendant at the hearing on his claims of ineffective assistance. *Id.* This procedure promotes consideration of *pro se* ineffective-assistance claims in the trial court and limits the issues on appeal. *People v. Jackson*, 2020 IL 124112, ¶ 95; see also *People v. Jocko*, 239 Ill. 2d 87, 91 (2010).

¶ 29 The State contends that, because Jazwiec had already withdrawn and O'Connor had been appointed to represent defendant, the *Krankel* inquiry was not needed. Relying on *People v. Cunningham*, 376 Ill. App. 3d 298, 304 (2007), the State argues that, because the sole purpose of the inquiry is to determine whether the court should appoint new counsel, the inquiry is irrelevant if the defendant has already received new counsel. *Id.* at 306.

¶ 30 In *Cunningham*, after the trial court found the defendant guilty of attempted murder, his attorney told the court that the defendant had filed a complaint against him with the Attorney Registration and Disciplinary Commission (ARDC). The attorney requested a continuance for the defendant to obtain new counsel. The court did not inquire into the ARDC complaint but granted

the continuance and then appointed new counsel, who represented the defendant at sentencing. On appeal, the defendant argued that a remand was needed for an inquiry into his ARDC complaint.

¶ 31 The appellate court disagreed. It reasoned that to obtain a preliminary inquiry, "a defendant must at least make *some* allegation of ineffective assistance of counsel for the court to consider and must provide some factual specificity of the reason for the allegation." (Emphasis in original.) *Id.* at 304. The court was not obligated to make a *Krankel* inquiry merely because the defendant had complained about his attorney's representation. *Id.* Further, when the defendant's attorney told the court about the ARDC complaint, the defendant did not request new counsel. *Id.* at 305.

¶ 32 The defendant in *Cunningham* relied on *People v. Jackson*, 243 Ill. App. 3d 1026 (1993), in which the trial court learned of the defendant's ARDC complaint against his attorney but denied the attorney's request to allow him to withdraw and appoint new counsel. The court distinguished *Jackson* because there the trial court had denied Jackson's request for new counsel. By contrast, Cunningham's request for new counsel was granted, "thus rendering moot any required inquiry into the ARDC complaint." *Cunningham*, 376 Ill. App. 3d at 306. The court stated, "In sum, the initial inquiry's purpose is to determine whether new counsel should be appointed. Such an inquiry is irrelevant in the present case because [the] defendant received new counsel." *Id.*

¶ 33 We find *Cunningham* distinguishable, as the primary basis for the court's holding was that the defendant had failed to meet *Krankel*'s threshold requirement of an actual allegation of ineffective assistance with at least some factual basis. Defendant did so here. He also requested new counsel. To the extent that *Cunningham* holds that a defendant's retention of new counsel automatically moots any inquiry into his *pro se* claim of ineffective assistance, we decline to follow it. To explain why, we turn to *People v. Reed*, 2018 IL App (1st) 160609. Although neither party cites *Reed*, it is highly instructive under facts very akin to those here.

¶ 34 In *Reed*, after the trial court found the defendant guilty of several charges, his attorney moved for a new trial. The defendant then filed a *pro se* claim of ineffective assistance on numerous grounds. The court allowed the attorney to withdraw. Eventually, the defendant retained a private attorney, who filed an amended motion for a new trial but essentially abandoned the claims of ineffective assistance. The court denied the amended motion for a new trial, sentenced the defendant, and denied his motion to reconsider the sentence. *Id.* ¶¶ 30-33.

¶ 35 On appeal, the defendant contended in part that the trial court had erred in forgoing a preliminary inquiry into his *pro se* claims of ineffective assistance. The appellate court agreed. It did not cite, much less discuss, *Cunningham*. But it implicitly rejected the broad reading of *Cunningham* that the State advocates here. The court held that *Krankel* required the trial court to conduct a preliminary inquiry into the *pro se* claims of ineffective assistance. *Id.* ¶ 51. The failure to conduct the hearing had prejudiced the defendant. The new attorney apparently made no inquiry into the defendant's claims that his previous attorney had been ineffective. *Id.* ¶ 51. In short, "there [was] no indication [that] he was "proceeding as *Krankel* counsel." *Id.* ¶ 52. Thus, he had abdicated his responsibility to evaluate independently his client's ineffective-assistance claims and either present those with merit or, if no claims had merit, move to withdraw. *Id.* A remand was necessary for a preliminary inquiry into the ineffective-assistance claims. *Id.* ¶ 53.

¶ 36 We follow *Reed* to the extent that it holds that, if the defendant has made a sufficient *pro se* claim of ineffective assistance and request for new counsel, the general appointment of new counsel does not eliminate the trial court's obligation to make a preliminary inquiry into the merits of the *pro se* claim. The salutary effects of retaining this requirement are two. First, the court retains the ability to weed out frivolous claims of ineffective assistance. This promotes judicial economy. If the trial court concludes that all of the *pro se* claims are frivolous, the court has fulfilled its

obligation to inquire and no *Krankel* counsel is necessary. Further, having resolved the *Krankel* issue, where new counsel is appointed upon the withdrawal of prior counsel, new counsel will act as general counsel (not *Krankel* counsel) to represent defendant in the remaining proceedings. Second, if the court finds nonfrivolous ineffective-assistance claims, it can avoid the problem in *Reed*: the danger that the new attorney will not realize that he or she has a distinctive role as *Krankel* counsel and is *not* generally appointed to take up where the former attorney left off. This problem is present here, and it supports defendant's fourth contention on appeal, to which we turn.

¶ 37 Defendant asserts that O'Connor did not fulfill her obligations under *Krankel*. He notes that, although his *pro se* motion raised several claims that Jazwiec had been ineffective, O'Connor neither pursued any of them nor moved to withdraw as counsel but instead proceeded solely on the pending motion to reconsider the sentence.[1] Defendant argues that by abandoning all of his claims of ineffective assistance, O'Connor provided no representation as *Krankel* counsel and thus prejudice is presumed from her deficient performance. See *United States v. Cronic*, 466 U.S. 648, 657-58 (1984); *People v. Downs*, 2017 IL App (2d) 121156-C, ¶¶ 66-68.

¶ 38 We agree with defendant. *Downs* controls, although the facts there are far more byzantine and the *Krankel* attorney's conduct much more egregious than anything here.

¶ 39 The crucial facts in *Downs* are these. After the defendant was convicted of first-degree murder, but before sentencing, he filed *pro se* motions alleging that his trial counsel had been ineffective. The trial court held a preliminary inquiry and appointed *Krankel* counsel, who filed an amended motion raising five claims of ineffective assistance, including that trial counsel had

---

[1] Defendant's *pro se* motion's claim of actual innocence was not a claim of ineffective assistance. Because defendant was still represented by counsel, it should not have been considered. See *People v. Rucker*, 346 Ill. App. 3d 873, 882-83 (2003).

neglected defendant's request to choose a bench trial and that counsel had failed to pursue the defendant's alibi defense. *Downs*, 2017 IL App (2d) 121156-C, ¶¶ 12-13. At a hearing on this motion, the trial court rescinded the appointment of *Krankel* counsel and reverted to the preliminary-inquiry stage of the *Krankel* procedure. At the hearing, the court ordered the defendant to present his allegations *pro se* and allowed his trial attorney and the State to argue against him. After this "adversarial hearing on the merits of each allegation" (*id.* ¶ 15), the court dismissed the claims (*id.* ¶ 21).

¶ 40 On appeal, we disapproved of the court's procedure and remanded the cause for the appointment of new *Krankel* counsel. The trial court reappointed the original *Krankel* attorney, who filed a third amended motion that argued that the bench-trial and alibi claims were without arguable merit and abandoned any claim other than a bare-bones assertion of ineffective assistance. *Downs*, 2017 IL App (2d) 121156-C, ¶¶ 22-26. At a hearing, the court directed *Krankel* counsel and the State to argue the third amended motion; the court then denied the motion as insufficient to raise a claim of ineffective assistance of trial counsel. *Id.* ¶¶ 32-33. After further appellate proceedings, we held that *Krankel* counsel had abdicated his role, so that prejudice was presumed. *Id.* ¶ 33; see *People v. Downs*, 2016 IL App (2d) 121156-B. The supreme court directed us to vacate our opinion and reconsider. *Downs*, 2017 IL App (2d) 121156-C, ¶ 33.

¶ 41 On reconsideration, we adhered to our holding that *Krankel* counsel had been ineffective for completely abandoning his obligations to the defendant and thus, in accordance with *Cronic*, prejudice was presumed. We explained that, upon appointment, the duty of a *Krankel* attorney is to satisfy both the obligation to represent his client by discerning and presenting nonfrivolous claims and the obligation not to present a frivolous pleading. *Id.* ¶ 49. Therefore, as with criminal defense attorneys in general (see, *e.g.*, *Anders v. California*, 386 U.S. 738 (1967); *People v.*

*Kuehner*, 2015 IL 117695, ¶ 21), "if *Krankel* counsel cannot find even a single nonfrivolous allegation of ineffective assistance of counsel," he or she must move for leave to withdraw from representing the defendant. *Downs*, 2017 IL App (2d) 121156-C, ¶ 51.

¶ 42 We turned to the specific issues in the case. We held first that *Krankel* counsel had performed deficiently by essentially abandoning all the defendant's ineffective-assistance claims, including the alibi claim, which we concluded was nonfrivolous. *Id.* ¶¶ 55-56.

¶ 43 Further, we held not merely that counsel had performed deficiently but that he had utterly failed to subject the ineffective-assistance claims to meaningful adversarial testing, thus creating a presumption of prejudice. *Id.* ¶ 66. Counsel not only abandoned all of the defendant's claims but argued against them. *Id.* ¶ 68. By presenting essentially nothing—the nonspecific catch-all claim of ineffectiveness—counsel had provided "no representation at all." *Id.* ¶ 69.

¶ 44 We then applied our earlier *caveat* about frivolous pleadings. Recognizing that counsel had not been obligated to present frivolous claims, we held that, had counsel been convinced that there were no meritorious claims, he was obligated to move to withdraw and explain to the court and the defendant why there were no potentially meritorious claims. *Id.* ¶ 75.

¶ 45 We reversed and remanded with instructions to the trial court to appoint a *Krankel* attorney (not the previous one) to investigate the defendant's claims of ineffective assistance and present any that were not frivolous. We directed the court to hold an appropriate second-stage adversarial hearing on the claims, if any, that counsel presented. Alternatively, we ordered that, if counsel concluded that no nonfrivolous claims existed, then counsel must file a motion to withdraw and an accompanying memorandum explaining why no claims had arguable merit. *Id.* ¶ 94.

¶ 46 We apply *Reed* and *Downs* here and conclude that, on this record, defendant's *Krankel* counsel abandoned the ineffective-assistance claims that defendant raised in his *pro se* motion but

she did not move to withdraw. Counsel's conduct here was far less egregious than in *Downs*, and to compare the two is, in some sense, unfair. Still, the only resolution of defendant's *pro se* motion in this case is counsel's statement on the record, and in defendant's presence, that defendant had decided not to proceed on his *pro se* claims. Counsel did not indicate whether she had independently evaluated the *pro se* claims and whether she found any of them to be meritorious. Given that counsel did not move to withdraw, she very well *may* have evaluated the *pro se* claims and found some of them to be meritorious but, upon consultation with and direction from defendant, declined to pursue them. On the other hand, it is possible that counsel did *not* evaluate the *pro se* claims and simply withdrew them, proceeding thereafter consistent with her appointment as new trial counsel. Because it is not clear from the record whether counsel fulfilled her duty to independently evaluate defendant's *pro se* claims, we must conclude that counsel failed to act as *Krankel* counsel at all. As such, prejudice is presumed under *Downs*.

¶ 47 We recognize counsel's predicament here. Rather than appoint new counsel solely to make a preliminary inquiry into defendant's *pro se* claims of ineffective assistance against his trial attorney, the trial court appointed new counsel to perform the dual role of *Krankel* counsel and of trial counsel for the remaining matters. Thus, the trial court put counsel in a difficult position. If counsel did not find a meritorious issue in defendant's *pro se* motion, she could not withdraw, as she was also appointed to represent defendant on the remaining underlying proceedings. The better practice would have been for the trial court to make a preliminary *Krankel* inquiry and, assuming defendant's *pro se* motion met the standard, appoint new counsel as *Krankel* counsel only, rather than as counsel in a dual role.

¶ 48 We reverse the judgment and remand the cause with directions to the trial court to appoint new counsel, who will investigate defendant's *pro se* claims of ineffective assistance and then

either (1) present any nonfrivolous claims in a proper motion and at a second-stage *Krankel* hearing or (2) move to withdraw on the basis that there are no nonfrivolous claims and, on the record, support the request to withdraw with a reasonably specific explanation of the facts and the law in support thereof.

¶ 49                                     III. CONCLUSION

¶ 50 For the reasons stated, we reverse the judgment of the circuit court of Winnebago County and remand the cause with directions.

¶ 51 Reversed and remanded with directions.

---

**No. 2-18-0087**

---

| | |
|---|---|
| **Cite as:** | *People v. Kyles*, 2020 IL App (2d) 180087 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 12-CF-1390; the Hon. John R. Truitt and the Hon. Brendan A. Maher, Judges, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Andrew S. Gable, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Adam Trejo, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---