Fourth Division
July 10, 2008

No. 1-06-0679

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 05 CR 10852 |
| | ) | |
| FATIMA GIVENS, | ) | Honorable |
| | ) | Daniel P. Darcy, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE NEVILLE delivered the opinion of the court:

Fatima Givens was charged with one count of possession of a controlled substance with intent to deliver. At the close of the State's case, the trial court granted Givens' motion for a directed verdict and dismissed the count for possession of a controlled substance with intent to deliver. Following a bench trial, Givens was found guilty of the lesser included offense of possession of a controlled substance and sentenced to 12 months' probation. In this appeal, Givens presents the following issues for review: (1) whether she received ineffective assistance of counsel because her trial counsel filed but withdrew a motion to quash arrest and suppress evidence; (2) whether the State failed to prove beyond a reasonable doubt that she had either actual or constructive possession of the drugs recovered inside her friend's apartment; (3) whether the State failed to establish a sufficient chain of custody where the inventory numbers of the items recovered did not match the number of the items that were tested; and (4) whether the trial court abused its discretion when it refused to sentence her to probation pursuant to section 410 of the Illinois Controlled Substances Act (720

ILCS 570/410 (West 2006)).  For the reasons that follow, we reverse and remand this case for a hearing on a motion to quash arrest and suppress evidence and, if necessary, a new trial.

## BACKGROUND

### Pretrial

On July 13, 2005, Givens' counsel filed a motion to quash arrest and suppress evidence that alleged that the arrest was made without authority of a valid search or arrest warrant.  Givens' motion also alleged that her conduct prior to the arrest could not reasonably be interpreted by the arresting officers as constituting probable cause that she had committed or was about to commit a crime.  Givens' motion further alleged that, due to the improper arrest, evidence recovered by the police should have been suppressed.

On January 11, 2006, Givens' counsel made an oral motion for leave to withdraw the July 13, 2005, motion to quash arrest and suppress evidence.  The trial court granted the motion to withdraw the motion to quash arrest and suppress evidence.

### Trial

### The State's Case

Officer Robert Graves testified that, on April 9, 2005, he, Officers Rafael Bonifazi and Stephen Lotts received information from a confidential informant that drugs were being sold in apartment 366 at 2804 N. Leavitt in Chicago.  The apartment was not rented by either Givens or Loving.  Instead, the apartment was rented by Teri Matthews, who was one of Givens' friends. Officer Graves testified that he and his fellow officers arrived at the building and met Matthews outside.  According to Officer Graves, Matthews signed a consent form that allowed the police to

enter her apartment and gave them a key. Officer Graves testified that the officers entered the apartment and approached the sole bedroom found therein. Officer Graves entered the bedroom and found Givens and Loving "still half asleep." According to Officer Graves, he and the other officers observed a clear plastic bag that contained 21 smaller plastic baggies. Each of the smaller plastic baggies contained crack cocaine. There was also a razor blade on the night stand next to the bed. Officer Graves also testified that the police recovered $355 of United States currency.

Officer Graves testified that he placed the subjects in custody, and he and his partner transported them and the recovered items to the 19th District for processing and inventory. Officer Graves testified that his partner, Officer Bonifazi, was responsible for conducting the actual inventory. Finally, Officer Graves testified that the recovered items were inventoried at the 19th District and the drugs were placed in a vault and the other items were placed in an inventory bin.

The State also presented a stipulation that if Officer Bonifazi testified his testimony would be that he inventoried the recovered narcotic items under inventory number "10513558" and heat-sealed them into an inventory envelope for delivery to the Illinois State Police crime lab. According to the stipulation, when the items left Officer Bonifazi's possession, they were in a sealed condition.

Next, the State presented a stipulation for the testimony of Hasnain Hamayat, a forensic chemist with the Illinois State Police crime lab. According to the stipulation, if Hamayat had been called to the stand, he would have testified (1) that he received the inventory from the Chicago police department in a heat-sealed condition; (2) that he opened the inventory envelope and found that it contained 21 plastic baggies; (3) that all of the equipment he used to test the inventory was tested, calibrated and functioning properly; (4) that Hamayat employed commonly accepted forensic

chemistry tests for ascertaining the presence of controlled substances; (5) that, after performing the tests on the contents of 14 of the 21 items recovered, Hamayat concluded that the items tested positive for the presence of cocaine and that the actual weight was 1.2 grams; (6) that the total estimated weight of the 21 items was 1.8 grams; and (7) that, after testing and analyzing inventory number "10515338," he resealed the items, would identify them in court as the same items he tested, and that a proper chain of custody was maintained.

Following the stipulations concerning Officer Bonifazi's and Hamayat's testimony, the State rested. The defense made a motion for a directed finding and argued that Givens was not seen holding, possessing, carrying or trying to sell any of the recovered narcotics. The defense also argued that no buyers were arrested. The State argued that the police entered the apartment with Matthews' permission and saw 21 bags of crack cocaine and other empty bags along with a razor blade. Based upon the aforementioned facts, the State argued that Givens had constructive possession of those items.

The trial court found that "[b]ased upon the evidence presented with regard to the motion for directed finding as to possession of a controlled substance with intent to deliver, it will be granted, but I find the State has put forth sufficient evidence to establish the lesser-included offense of possession of a controlled substance."

### The Defendant's Case

Crystal Giles, a friend of the defendant, testified that on April 9, 2005, at 11:30 a.m., she was walking from 2890 North Clybourn to 2816 North Leavitt when she observed her mother's friend, Teri Matthews, being held up against a wall by police officers who were going through her pockets.

Giles also testified that she observed a police officer with Matthews' keys and she observed Matthews go up the stairs into her building with the police officers.

Teri Matthews testified that she did not voluntarily sign a consent-to-search form. Matthews testified that she was on her way home when Officer DeLaFont approached her. According to Matthews, the police brought her into her apartment after they had been upstairs. Matthews testified that she was told that she would lose her house if she did not sign a consent form, so she signed it.

Fatima Givens testified that she was in Teri Matthews' apartment on April 9, 2005, at 11:30 a.m. Givens testified that she was a houseguest in Matthews' apartment the night before. According to Givens, she invited Loving to stay with her that night. The following morning, Matthews knocked on the bedroom door and told Givens that she was going to the store. Then Matthews left the apartment. Givens also testified that, when she got up to use the washroom, she opened the bedroom door and three police officers rushed in. According to Givens, the officers put handcuffs on her and Loving and led them out of the bedroom while they searched it. Givens testified that the police showed her a signed consent-to-search form and told her they found something but refused to tell her what it was. Givens also testified that she and Loving were taken to the 19th District police station. Finally, Givens denied storing or selling cocaine.

The State's Rebuttal

Officer Stephen Lotts testified in rebuttal that he went to 2804 North Leavitt to follow up on a tip from a confidential informant that drugs were being sold out of apartment 366. According to Officer Lotts, Matthews gave written consent to search the apartment and gave them keys. Officer Lotts denied that he or any of the police officers on the scene held Matthews against a wall. He also

denied that any officer made threats to Matthews in order to get her to sign the consent-to-search form. Officer Lotts testified that Matthews remained outside the apartment building the entire time the apartment was being searched. Following Officer Lotts' testimony, the State rested in rebuttal.

The trial court found Givens guilty of possession of a controlled substance. On February 2, 2006, Givens filed a motion for new trial. The trial court denied the defendant's motion for a new trial and, after hearing arguments in aggravation and mitigation, sentenced Givens to 12 months of probation, 50 hours of community service, and DNA indexing. The trial court also assessed costs and fees of $1,259. The defendant made an oral motion to reconsider the sentence and requested that she be sentenced to probation pursuant to section 410 of the Illinois Controlled Substances Act. 720 ILCS 570/410 (West 2006). The trial court denied the defendant's oral motion.

## ANALYSIS

Givens argues that she received ineffective assistance of counsel when her counsel filed a motion to quash her arrest and suppress the evidence gathered after her arrest but withdrew the motion on the day of trial. Givens argues that her counsel should not have withdrawn the motion because the evidence adduced at trial cast doubt on the voluntariness of Matthews' consent to allow the police to enter and search her apartment. Givens also argues that her motion had a reasonable probability of success.

The State argues that Givens did not receive ineffective assistance of counsel because the motion to quash arrest and suppress evidence would have been futile. The State bases its argument on the fact that Matthews voluntarily consented to the search and that, based upon that voluntary consent, counsel was not required to proceed to a hearing on the motion. The State also argues that,

based on the evidence presented at trial, counsel's decision was trial strategy, which cannot form the basis of a claim of ineffective assistance of counsel.

The law of ineffective assistance of counsel is well established. "The sixth amendment to the Constitution 'recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.' " People v. Cunningham, 376 Ill. App. 3d 298, 301 (2007), quoting Strickland v. Washington, 466 U.S. 668, 685, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063 (1984). "An accused is entitled to 'reasonably effective assistance,' and the touchstone for judging claims of ineffective assistance is whether an attorney's conduct renders the trial results undependable." Cunningham, 376 Ill. App. 3d at 301, quoting Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693,104 S. Ct. at 2064. Strickland has been adopted by the Illinois Supreme Court. People v. Albanese, 104 Ill. 2d 504, 526 (1984).

There are strict criteria for determining whether counsel is incompetent. People v. Houston, 226 Ill. 2d 135, 143 (2007), citing People v. Thompkins, 121 Ill. 2d 401, 447 (1988). In order to prevail on a claim of ineffective assistance of counsel, "the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " People v. Deleon, 227 Ill. 2d 322, 337-38 (2008), quoting Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see also Houston, 226 Ill. 2d at 144, citing People v. Evans, 209 Ill. 2d 194, 219-20 (2004), and People v. Peeples, 205 Ill. 2d 480, 512-13 (2002) (ineffective assistance of counsel requires both objectively deficient performance (deficiency prong) and prejudice to the defendant that results from that deficient performance

(prejudice prong)).

Under the deficiency prong of the <u>Strickland</u> test, "a defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy." <u>Houston</u>, 226 Ill. 2d at 144, citing <u>Peeples</u>, 205 Ill. 2d at 512. "[C]ounsel is afforded wide latitude when making tactical decisions and the law presumes that counsel will faithfully fulfill his or her role envisioned by the sixth amendment." <u>Cunningham</u>, 376 Ill. App. 3d at 301, citing <u>Strickland</u>, 466 U.S. at 688-89, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65; see also <u>People v. Spann</u>, 332 Ill. App. 3d 425, 430 (2002) ("The reviewing court, without engaging in hindsight, must presume that counsel's performance fell within the wide range of reasonable professional assistance"), citing <u>Strickland</u>, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. <u>Cunningham</u> holds that "counsel's assistance must fall 'outside the wide range of professionally competent assistance' considering all the circumstances." <u>Cunningham</u>, 376 Ill. App. 3d at 301, quoting <u>Strickland</u>, 466 U.S. at 690, 80 L. Ed. 2d at 695,104 S. Ct. at 2066.

In evaluating the performance of trial counsel, we recognize that "[d]efense counsel, at a minimum, must act as an advocate for the accused by subjecting the State's case to meaningful adversarial testing." <u>Spann</u>, 332 Ill. App. 3d at 430, citing <u>People v. Shelton</u>, 281 Ill. App. 3d 1027, 1037 (1996). In order to determine whether counsel has failed to subject the State's case to meaningful adversarial testing and prejudice to the defendant has resulted, the United States Supreme Court instructs us to consider whether there has been a complete failure to oppose the State's case. <u>People v. Abdullah</u>, 336 Ill. App. 3d 940, 951 (2002), citing <u>United States v. Cronic</u>, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984). <u>Cronic</u> holds that "if counsel entirely fails

to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of [s]ixth [-][a]mendment rights that makes the adversary process itself presumptively unreliable." Cronic, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047. Cronic also holds that the sixth amendment is not limited to a consideration of counsel's performance as a whole, but, as in this case, a specific error or omission may be the focus of a claim of ineffective assistance of counsel. Cronic, 466 U.S. at 657 n.20, 80 L. Ed. 2d at 666 n.20, 104 S. Ct. at 2046 n.20.

The test for deficient performance is whether counsel's performance was objectively unreasonable under prevailing professional norms. Deleon, 227 Ill. 2d at 337-38, quoting Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698,104 S. Ct. at 2068. With regard to the prejudice prong of the Strickland test, a reasonable probability that the result would have been different is a probability that undermines confidence in the outcome. Deleon, 227 Ill. 2d at 337-38; Houston, 226 Ill. 2d at 144, citing Evans, 209 Ill. 2d at 220 and Peeples, 205 Ill. 2d at 513.

An attorney's decision whether to file a motion to quash arrest is generally a matter of trial strategy that should be accorded great deference and is not ordinarily challengeable as ineffective assistance of counsel. People v. Rucker, 346 Ill. App. 3d 873, 885 (2003), citing People v. Lundy, 334 Ill. App. 3d 819, 830 (2002). Similarly, "the decision whether to file a motion to suppress is generally 'a matter of trial strategy, which is entitled to great deference.'" People v. Bew, 228 Ill. 2d 122, 128 (2008), quoting People v. White, 221 Ill. 2d 1, 21 (2006). "Neither mistakes in strategy nor another attorney's hindsight is sufficient to demonstrate that trial counsel was objectively incompetent." People v. Woodard, 367 Ill. App. 3d 304, 312 (2006), citing People v. Young, 341 Ill. App. 3d 379, 383 (2003).

In order to successfully bring a claim of ineffective assistance of counsel based upon the failure to file either a motion to quash arrest or a motion to suppress evidence, " ' "a defendant must show that a reasonable probability exists both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed." [Citations].' " Rucker, 346 Ill. App.3d at 885-86, quoting People v. Lundy, 334 Ill. App. 3d 819, 830 (2002), quoting People v. Nunez, 325 Ill. App. 3d 35, 42 (2001), citing People v. Orange, 168 Ill. 2d 138, 153 (1995), and People v. Myers, 246 Ill. App. 3d 542, 545 (1993).  However, we note that "[a]n attorney will not be deemed ineffective for a failure to file a futile motion."  Rucker, 346 Ill. App. 3d at 886, citing Lundy, 334 Ill. App. 3d at 830.

The record reveals that the trial court judge believed Officer Graves' and Officer Lotts' testimony (1) that Matthews gave oral consent to Officers Graves and Bonifazi to enter her apartment and gave them her key; and (2) that Matthews memorialized her consent by signing a Chicago police department consent-to-search form.[1] The record also reveals (1) that the police did not ask Givens for her consent to enter her bedroom; (2) that Givens did not give her consent to the police to enter the bedroom that she and Loving slept in; and (3) that the police went to Matthews' apartment, based upon an unidentified informant's tip, and entered Givens' bedroom without exigent circumstances or a search warrant, an arrest warrant, or Givens' consent.

"The Fourth Amendment [to the United States Constitution] guarantees: '[t]he right of the

---

[1]  The actual signed copy of the consent-to-search form or a facsimile thereof was not included in the record on appeal.  However, the record reveals a Chicago police department property inventory form bearing number "10513554" that provides that a consent-to-search form was signed by Terry Matthews and inventoried as item number 924987.

people to be secure in their *persons, houses*, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' " (Emphasis added.)  Minnesota v. Carter, 525 U.S. 83, 88, 142 L. Ed. 2d 373, 379, 119 S. Ct. 469, 473 (1998).  The protection of the fourth amendment extends to people and not to the places they occupy (Carter, 525 U.S. at 88, 142 L. Ed. 2d at 379, 119 S. Ct. at 473) and "provides sanctuary for citizens wherever they have a legitimate expectation of privacy" Minnesota v. Olson, 495 U.S. 91, 96 n.5, 109 L. Ed. 2d 85, 93 n.5, 110 S. Ct. 1684, 1688 n.5 (1990), citing Katz v. United States, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 581-82, 88 S. Ct. 507, 511 (1967)).  We note that " 'the Illinois Constitution goes beyond Federal constitutional guarantees by expressly recognizing a zone of personal privacy.' "  In re Lakisha M., 227 Ill. 2d 259, 279 (2008), quoting In re May 1991 Will County Grand Jury, 152 Ill. 2d 381, 391 (1992).  In Illinois, the right to privacy is codified in article 1, section 6, of the Illinois Constitution, which provides:

> "The people shall have the right to be secure in their persons,
> houses, papers and other possessions against unreasonable searches,
> seizures, invasions of privacy or interceptions of communications by
> eavesdropping devices or other means. No warrant shall issue without
> probable cause, supported by affidavit particularly describing the
> place to be searched and the persons or things to be seized.  Ill.
> Const.1970, art. I, §6.

Therefore, at a minimum, under either the fourth amendment to the United States Constitution or

article 1, section 6, of the Illinois Constitution, we find that once the right to privacy is established, the court must determine whether the State's invasion of an individual's privacy is reasonable. People v. Caballes, 221 Ill. 2d 282, 321 (2006); see also Carter, 525 U.S. at 88, 142 L. Ed. 2d at 379, 119 S. Ct. at 473, quoting Rakas v. Illinois, 439 U.S. 128, 143 n.12, 58 L. Ed. 2d 387, 401 n.12, 99 S. Ct. 421, 430 n.12 (1978), citing Smith v. Maryland, 442 U.S. 735, 740-41, 61 L. Ed. 2d 220, 226-27, 99 S. Ct. 2577, 2580-81 (1979) ("in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he [or she] personally has an expectation of privacy in the place searched, and that his [or her] expectation is reasonable; i.e., one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society' ").

In determining whether the State's invasion of a person's, here Givens', privacy was reasonable, this court recognizes that "[i]n the absence of consent or exigent circumstances, the police are prohibited from making a warrantless entry into a private residence to effectuate a routine felony arrest." People v. Williams, 161 Ill. 2d 1, 25-26 (1994), citing Payton v. New York, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), and People v. Abney, 81 Ill. 2d 159, 163-74 (1980). The Illinois Supreme Court has identified a nonexhaustive list of eight factors that have been considered to be relevant to a determination of exigency, including: (1) whether the crime under investigation was recently committed; (2) whether there was any deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) whether a grave offense was involved, particularly a crime of violence; (4) whether there was reasonable belief that the suspect was armed; (5) whether the police officers were acting on a clear showing of probable cause; (6)

whether there was a likelihood that the suspect would escape if he was not swiftly apprehended; (7) whether there was strong reason to believe the suspect was in the premises; and (8) whether the police entry was made peaceably, albeit nonconsensually. Williams, 161 Ill. 2d at 26, citing People v. Foskey, 136 Ill. 2d 66, 75 (1990), People v. White, 117 Ill. 2d 194, 216-17 (1987), People v. Yates, 98 Ill. 2d 502, 515 (1983) and People v. Abney, 81 Ill. 2d 159, 169-74 (1980); see also Minnesota v. Olson, 495 U.S. 91, 100, 109 L. Ed. 2d 85, 95, 110 S. Ct. 1684, 1690 (1990), quoting State v. Olson, 436 N.W.2d 92, 97 (Minn. 1989), citing Welsh v. Wisconsin, 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984) (" 'a warrantless intrusion may be justified by hot pursuit of a fleeing felon, or imminent destruction of evidence [citation], or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling' ").

In this case, the police obtained their information from an unidentified informant, and there was no testimony in the record that the police observed Givens committing a criminal offense. Second, while the police received information concerning drug sales at the apartment from a confidential informant, they did not observe Givens selling drugs on April 9, 2005, at 11:30 a.m. Third, Givens was not suspected of a crime of violence. Fourth, there is no evidence in the record that the police believed that Givens was armed nor did the police report seizing a weapon. Fifth, the police did not observe Givens selling drugs or committing any other offense on April 9, 2005, did not provide the specific information provided by the informant, and did not indicate that the informant had provided accurate information in the past, and therefore, they did not have probable cause for Givens' arrest. Sixth, the police did not testify that they believed that Givens would escape, and when the police entered the bedroom Givens and Loving were in, according to Officer Graves,

they were  "still half asleep."  Seventh, the police were told by their informant that Givens and her boyfriend were in the apartment and they entered Matthews' apartment with her key. While the entry into Matthews' apartment was made peaceably, the entry into Givens' bedroom was made without an arrest warrant, a search warrant or Givens' consent and the police did not testify that they knocked on the bedroom door or announced their office.  725 ILCS 5/108-8 (West 2004) (even with a warrant, an officer may only enter a residence without knocking or announcing his office if a judge finds that if notice were given a weapon would be used or if notice were given the evidence would be destroyed).  Finally, the State did not present evidence that established that they were in hot pursuit of Givens, that Givens was in the process of destroying evidence, that Givens was attempting to escape, or that an officer was in danger; therefore, there was no evidence in the record to justify the warrantless intrusion into Givens' bedroom.

Next, having established (1) that a right to privacy exists under both the United States Constitution and the Illinois Constitution, and (2) that the police lacked consent and there were no exigent circumstances that would justify their warrantless entry into Givens' bedroom, we turn to the question of whether the right to privacy extends to Givens while a short-term houseguest in Matthews' apartment.  The United States Supreme Court has historically included "an overnight guest in a house" in the class of persons who "ha[ve] the sort of expectation of privacy that the Fourth Amendment protects."  Carter, 525 U.S. at 89, 142 L. Ed. 2d at 379-80, 119 S. Ct. at 473, Olson, 495 U.S. at 98-99, 109 L. Ed. 2d at 94-95, 110 S. Ct. 1684, 1689 (1990).  As the United States Supreme Court explained:

" 'To hold that an overnight guest has a legitimate expectation of

privacy in his host's home merely recognizes the every day expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend....

From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.' " Carter, 525 U.S. at 89, 142 L. Ed. 2d at 380, 119 S. Ct. at 473, quoting Minnesota v. Olson, 495 U.S. 91, 98-99, 109 L. Ed. 2d 85, 94-95, 110 S. Ct. 1684, 1689 (1990).

In light of the fact that United States Supreme Court case law holds that a houseguest like Givens has a reasonable expectation of privacy sufficient to trigger fourth amendment protections

(Carter, 525 U.S. at 89, 142 L. Ed. 2d at 380, 119 S. Ct. at 473, quoting Minnesota v. Olson, 495 U.S. 91, 98-99, 109 L. Ed. 2d 85, 94-95, 110 S. Ct. 1684, 1689 (1990)), we now turn to the question of whether Givens had a reasonable expectation of privacy in Matthews' apartment. Our supreme court holds that "[s]everal factors should be examined to determine whether a defendant possesses a reasonable expectation of privacy: (1) ownership of the property searched; (2) whether the defendant was legitimately present in the area searched; (3) whether defendant has a possessory interest in the area or property seized; (4) prior use of the area searched or property seized; (5) the ability to control or exclude others from the use of the property; and (6) whether the defendant himself had a subjective expectation of privacy in the property." People v. Pitman, 211 Ill. 2d 502, 520-21 (2004), citing People v. Johnson, 114 Ill. 2d 170, 191-92 (1986). Although Givens did not own or lease the apartment that was searched and the record does not indicate that she had a history of prior use of the bedroom that was searched, we find (1) that she was legitimately in the bedroom at Matthews', the lessee's, invitation; (2) that she had a possessory interest in the bedroom, albeit a temporary one; (3) that she had the ability to control or exclude others from the use of the bedroom because Matthews allowed her (a) to use the bedroom, (b) to close the bedroom door while sleeping in the bedroom with Loving, and (c) to lock the door to the apartment after Matthews left to go to the store so Givens could exclude people from the apartment and from her bedroom; and (4) that she had a subjective expectation of privacy once she was allowed to use the bedroom, to close the door to the bedroom, and to lock the apartment door.

Therefore, based on Carter and Pittman, we find (1) that Givens had a reasonable expectation of privacy in the bedroom she was occupying as a houseguest (Carter, 525 U.S. at 88, 142 L. Ed. 2d

at 379, 119 S. Ct. at 473; Pitman, 211 Ill. 2d at 520-21), and (2) that Matthews only had the right to give her consent to allow the police to enter into the common areas of her apartment, but she could not give her consent to the police to enter the bedroom that was occupied exclusively by Givens. Pitman, 211 Ill. 2d at 523, citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043-44 (1973), and People v. Bull, 185 Ill. 2d 179, 197 (1998). In light of the fact that Matthews permitted Givens to sleep in her bedroom, and that Givens, a houseguest, has a fourth amendment right to privacy and thus a right to be free from unreasonable searches and seizures in Matthews' bedroom, Matthews could not, through her consent, give the police legal authority to enter Givens' bedroom and violate her right to privacy. Carter, 525 U.S. at 88, 142 L. Ed. 2d at 379, 119 S. Ct. at 473.

Next, we must examine the question of whether Givens' counsel was ineffective for withdrawing the motion to quash her arrest and suppress the evidence obtained after the arrest. The record reveals that Givens' counsel drafted and filed the motion to quash arrest and suppress evidence and later withdrew it. Defense counsel's motion establishes that counsel was aware of (1) the issue concerning the legality of the arrest and search, and (2) the issue concerning the admissibility of the evidence obtained incident to the arrest. Counsel reviewed the facts and circumstances of Givens' case and concluded (1) that Matthews, the leaseholder, consented to the search of the apartment, and (2) that the leaseholder's consent gave the police the right to enter Givens' bedroom. Defendant's counsel failed to consider Carter and Olson and three facts: (1) that a house guest like Givens had a fourth amendment right to privacy and thus a right to be free from unreasonable searches and seizures (Carter, 525 U.S. at 89, 142 L. Ed. 2d at 380, 119 S. Ct. at 473,

quoting Olson, 495 U.S. at 98-99, 109 L. Ed. 2d at 94-95, 110 S. Ct. at 1689); (2) that Givens' right to privacy, in the absence of exigent circumstances, made her consent a condition precedent to the police making a warrantless entry into her bedroom; and (3) that the police entered Givens' bedroom without her consent or exigent circumstances. Therefore, defense counsel's decision to withdraw the motion to quash arrest and suppress evidence was a strategic decision based on erroneous conclusions.

The question remains whether defense counsel's strategic decision was so unsound that counsel failed to subject the State's case to meaningful adversarial testing. Abdullah, 336 Ill. App. 3d at 951, citing Cronic, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047; Spann, 332 Ill. App. 3d at 430, citing Shelton, 281 Ill. App. 3d at 1037. In addition, we must determine whether defense counsel's performance was objectively unreasonable, and whether but for defense counsel's errors, the result in the proceeding would have been different. Deleon, 227 Ill. 2d at 337-38, quoting Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

We note, as previously indicated, that, as a houseguest, Givens had a right codified in the fourth amendment and article I, section 6, of the Illinois Constitution, to a reasonable expectation of privacy in Matthews' bedroom. Carter, 525 U.S. at 89, 142 L. Ed. 2d at 380, 119 S. Ct. at 473. The evidence in the record, when taken in the light most favorable to the State, reveals that Officer Graves did not observe the drugs, the razor blade, and the plastic bags outside Givens' bedroom where Matthews' consent gave the police a right to be, but inside Givens' bedroom where Givens had an expectation of privacy and where the officer had no right to be without Givens' consent. The evidence also establishes that the police entered Givens' bedroom without an arrest warrant, a search

warrant, exigent circumstances or her consent. By failing to file the motion, Givens' attorney (1) failed to question the legality of the police entry into Givens' bedroom without an arrest warrant, a search warrant, exigent circumstances or Givens' consent, and (2) failed to question the admissibility of the evidence, the 21 bags of cocaine seized by the police, that the State needed to convict Givens of possession of a controlled substance. When the police entered Givens' bedroom without an arrest warrant, a search warrant, her consent or exigent circumstances and placed her under arrest, they violated Givens' constitutional right to privacy (the fourth amendment to the United States Constitution and article 1, section 6, of the Illinois Constitution); therefore, the drugs were not admissible in evidence because they were the fruit of an illegal arrest. U.S. Const. Amend. 4; Ill. Const.1970, art. I, §6. Accordingly, Givens' attorney failed to subject the State's case to meaningful adversarial testing because the trial court was never required to decide whether the police entry into Givens' bedroom and the seizure of the drugs violated Givens' constitutional rights.

Carter and Olson make it clear that because Givens was Matthews' houseguest, her motion to quash arrest and suppress evidence probably would have been granted. Carter, 525 U.S. at 89, 142 L. Ed. 2d at 380, 119 S. Ct. at 473, quoting Olson, 495 U.S. at 98-99, 109 L. Ed. 2d at 94-95, 110 S. Ct. at 1689. In light of Carter and Olson, we find that counsel's strategic decision to withdraw the motion was objectively unreasonable and that, but for defense counsel's decision to withdraw the motion, there is a reasonable probability that the result of the proceeding would have been different: the 21 bags of drugs would not have been admitted in evidence. The fact that there is a reasonable probability that the result would have been different undermines this court's confidence in the verdict. Accordingly, we hold that Givens did not receive effective assistance of counsel. Deleon,

- 19 -

227 Ill. 2d at 337-38, quoting Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In light of the violations of Givens' constitutional rights, it is unnecessary for this court to reach the defendant's other contentions on appeal. Both the federal and state constitutions provide that no person shall be put in jeopardy twice for the same criminal offense. People v. Pinkonsly, 207 Ill. 2d 555, 564 (2003), citing U.S. Const., amends. V, XIV; Ill. Const.1970, art. I, §10. "The double jeopardy clause protects a defendant from: (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense." People v. Whitfield, 228 Ill. 2d 502, 516 (2007), citing People v. Gray, 214 Ill. 2d 1, 6 (2005). "The prohibition against double jeopardy forbids a second trial if the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt in the initial proceeding." People v. Davis, 377 Ill. App. 3d 735, 747 (2007), citing People v. Taylor, 76 Ill. 2d 289, 309 (1979). We note that a reversal for trial error is a determination that the defendant has been convicted by means of a fundamentally defective judicial process. People v. Olivera, 164 Ill. 2d 382, 393 (1995). A reversal for evidentiary insufficiency occurs when the prosecution has failed to prove its case, and the only proper remedy is a judgment of acquittal. Olivera, 164 Ill. 2d at 393. In this case, this court finds that the evidence was sufficient to convict, but a new trial is required to correct the errors made by defense counsel that deprived Givens of a fair trial.

CONCLUSION

In light of the foregoing, we reverse Givens' conviction and sentence and remand this case with directions: (1) to permit defense counsel to file a motion to quash arrest and suppress evidence; (2) to hold a hearing on the defendant's motion to quash arrest and suppress evidence; and (3) if

necessary, after the hearing on the motion to quash arrest and suppress evidence, hold a new trial.

Reversed and remanded with directions.

CAMPBELL, J., and O'BRIEN, J., concur.